IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PAIGE VORARATH o/b/o
TYLER VORARATH                                                    PLAINTIFF


v.                               CIVIL NO. 21-5001


KILOLO KIJAKAZI,[1] Acting Commissioner
Social Security Administration                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Paige Vorarath, on behalf of Tyler Vorarath (hereinafter "Plaintiff"), brings this action

pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's claims supplemental security

income (SSI) benefits under the provisions of Titles XVI of the Social Security Act (Act).  In this

judicial review, the Court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current application for SSI on July 5, 2018, alleging an

inability to work due to ADHD and autism.  (Tr. 72-73, 178).  An administrative hearing was held

on January 6, 2020, at which Plaintiff appeared with counsel and testified. (Tr. 30-71).

By written decision dated June 12, 2020, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 13).

Specifically, the ALJ found Plaintiff had the following severe impairments: a generalized anxiety

disorder; attention-deficit hyperactivity disorder (ADHD); Level 1 Autism Spectrum Disorder; and

---

[1] Kilolo Kijakazi, has been appointed to serve as Acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

a learning disorder involving math. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is unable to climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to hazards, including no driving as part of work. The claimant is able to perform unskilled work where interpersonal contact is incidental to work performed; the complexity of tasks is learned and performed by rote; tasks have few variables and require little judgment; and the supervision required is simple, direct, and concrete.

(Tr. 15). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a cook helper, an air purifier servicer, an office helper, a tube clerk, and an addressing clerk. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who, denied that request on November 16, 2020. (Tr. 1-4). Subsequently, Plaintiff filed this action. (ECF No. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 16, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the time of the administrative hearing on January 6, 2020, Plaintiff testified that he was nineteen years of age; had obtained a high school education; and had taken classes at a community college. (Tr. 36). Plaintiff testified that he was able to take care of his personal needs, and to do some household chores but would sometimes need reminders. Plaintiff testified that he would have difficulty living on his own; and being solely responsible for paying his bills on time. (Tr. 45-46).

The pertinent medical evidence for the time period in question reflects the following. On August 21, 2018, Plaintiff was seen by  Ryan, M. Frederick, LPC, for a new evaluation and treatment of Autism Spectra Disorder Level 1 (ASP), and a generalize anxiety disorder. (Tr. 503-513, 540). Mr. Frederick noted Plaintiff was referred for therapy by Dr. Sarah Downing. Plaintiff reported that he lived with his mother and three sisters; that he graduated from high school in May of 2018; and that he intended to enroll in NWACC (Northwest Arkansas Community College). Plaintiff's concerns centered around his anxiety and social skill development. Upon observation, Mr. Frederick noted Plaintiff was well kempt; maintained good eye contact; had an anxious mood; had no difficulty with attention or concentration; and had normal memory and judgment. Plaintiff fully participated during the session despite his anxiety. Plaintiff requested help with managing his anxiety symptoms; coping with his recent diagnosis of ASP; and transitioning into college.

On September 5, 2018, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 514-524). Plaintiff indicated he was past being anxious about starting school and was ready to just start attending as soon as his financial aid was granted. Plaintiff reported he had been sick which had impacted his sleep. While Plaintiff had passed the written portion of the driver's license test, he had not obtained his license. Upon observation, Mr. Frederick noted Plaintiff was alert and oriented in all spheres; that he appeared well-kempt; that he was cooperative during the session; that he had no difficulty with attention or concentration; and that he exhibited normal memory and judgment. Plaintiff participated fully during the session and initiated some conversation related to the video viewed during the session. Plaintiff was able to identify social skills that he had learned and adapted. Plaintiff reported feeling disconnected from acquaintances recently because some people were still in high school and he had not yet started college classes.

On October 1, 2018, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 573-574). Plaintiff reported that he had obtained financial aid, but would have to wait until next semester to start classes. Mr. Frederick noted Plaintiff was experiencing anticipatory anxiety with respect to starting school. Plaintiff was looking into a career as a biomedical technician. Plaintiff reported he had been running in the morning and had not experienced much anxiety due to his being home primarily. Plaintiff talked about his father, who he had not seen in one to two years. Mr. Frederick noted that Plaintiff was living in a home with four other family members and that he slept on the couch. Plaintiff reported it was his responsibility to take his younger sister to a neighbor's house each morning prior to school. During this session, Mr. Frederick noted he spoke openly with Plaintiff about his estranged relationship with his father. Plaintiff expressed little interest in seeing his father due to his negative memories revolving around his father's alcohol abuse in the past. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick noted Plaintiff's schedule needed more structure, but there was improvement with the addition of productive activities like running to his day.

On October 2, 2018, Dr. Jon Etienne Mourot, a non-examining medical consultant completed a Psychiatric Review Technique assessment opining that Plaintiff has mild limitations with understanding, remembering, or applying information; moderate limitations with interacting with others; moderate limitations with concentrating, persisting, and maintaining pace; and moderate limitations with adapting and managing oneself. (Tr. 78). Dr. Mourot also completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 80-82).

4

On October 16, 2018, Plaintiff was seen by Dr. Hugh G. Donnell, for a follow-up appointment for his anxiety. (Tr. 554-565). Dr. Donnell noted Plaintiff's anxiety was not a new problem and was overall better. Plaintiff reported he was able to stay more focused with crowds and in an uncontrolled environment. Plaintiff indicted that when he progressively became more anxious and agitated he sometimes had to leave, sometimes could focus; and sometimes became angry. No depressive symptoms were observed. Plaintiff was to continue with his medication and to return in one month.

On November 1, 2018, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 569-571). Therapy notes reflect Plaintiff was planning to start college next semester. Plaintiff reported he was taking anxiety medication as prescribed. Driving and interacting with his younger sister continued to be sources of anxiety for Plaintiff. Plaintiff and his older sister discussed how they have taken on a parenting role for their younger sister because of their mother's depression and inability to implement consequences after their father left the home a few years ago. Plaintiff reported that his younger sister did not always respond well to his redirection which caused conflict. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment.  In order to help with his agitation, it was agreed that Plaintiff would report his younger sister's problematic behavior to his older sisters or mother instead of directly intervening.

On December 19, 2018, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 586-597). Therapy notes indicate Plaintiff had been taking his medication consistently and that he was more patient with his mother and younger sister.  Plaintiff was worried his father would come into town during the holiday season but so far that had not happened. Mr. Frederick noted anxiety continued to be present regarding driving and the potential for a wreck. Upon observation, Mr.

5

Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick noted both the medication and having other family members take back more of the parental responsibility for Plaintiff's younger sister had helped. Mr. Frederick noted Plaintiff's sister's car wreck the previous year had increased Plaintiff's anxiety toward driving. It was suggested that Plaintiff ask his older sister to take him to a parking lot to practice driving.

On January 18, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 598-609). Plaintiff reported he finished his first week at community college and that he knew several students in his classes. Plaintiff indicated he would also be meeting with disability services to see what assistance there was for him. Plaintiff's two older sisters attended the therapy session and reported Plaintiff had been reactive toward their mother at times. Plaintiff explained this often happened when he misinterpreted tone and/or he felt his mother or sisters were treating him as if he was not smart. Plaintiff and his sisters discussed the difficulty managing anxiety and depression after their father left their family. Plaintiff reported he had no desire to see his father, and that the family was going to take a trip out of town during the time his father was supposed to visit the area this summer. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment.  Mr. Frederick assessed that Plaintiff had done well with his transition to college; and that Plaintiff set a goal to meet with student disability services the next week to help implement academic supports. Mr. Frederick noted Plaintiff often had difficulty articulating why he was anxious or stressed.

On February 1, 2019, Dr. Kevin Santulli, a non-examining medical consultant completed a Psychiatric Review Technique assessment opining that Plaintiff has mild limitations with

understanding, remembering, or applying information; moderate limitations with interacting with others; moderate limitations with concentrating, persisting, and maintaining pace; and moderate limitations with adapting and managing oneself. (Tr. 95). Dr. Santulli also completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 97-100).

On February 22, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 610-621). Plaintiff reported he had done better at not letting his younger sister "get to him." Plaintiff continued to attend community college, but reported he had needed frequent reminders to change/drop his college courses. Plaintiff indicated he had become more reactive to family members when he perceived they were talking down to him. Plaintiff reported feeling more anxious when he felt family members were not letting him know what was occurring in the home. Plaintiff's family members discussed the difficult dynamics caused by the divorce of their parents. Family members were open to Plaintiff advocating for his needs and made a commitment to better inform him. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment.

On March 15, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 622-634). Plaintiff reported he had taken his medication consistently. Plaintiff was enjoying his college experience, noting he did not have difficulty communicating at school but did have some difficulty checking messages through the college communication program. Plaintiff reported he had been socializing with other students and that he had a paper to write over Spring Break. Mr. Frederick noted Plaintiff had met several friends through school and that he was participating in the "Geek Alliance Club." Plaintiff reported he had dropped his math class after the free trial for the program

7

needed to take the class had expired. He had not let his family know he was not taking the class and was anxious about telling them. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Plaintiff was able to role-play how he would communicate to his family about the class and how to ask disability services for help with obtaining the program needed to take the class.

On April 17, 2019, Plaintiff was seen by Dr. Donnell for a follow-up regarding his anxiety. (Tr. 726-737). Plaintiff reported his symptoms were not better but he also had not been taking his medication every day.  Dr. Donnell noted Plaintiff started Zoloft recently and that Plaintiff took the medication most days but often forgot on weekends. Plaintiff's mother noted Plaintiff's anxiety and temper were better. Dr. Donnell increased Plaintiff's daily Zoloft dosage and recommended Plaintiff return in one month.

On April 19, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 635-647). Plaintiff reported he had a positive trip with his family over Spring Break. He had also informed his mother and sisters about withdrawing from a class and while they were angry at first they all agreed he would add the class the following semester. Plaintiff reported when his mother was irritated/angry he punched himself twice, but after calming down was able to talk to his mother. Plaintiff was able to discuss alternative self-soothing behaviors to utilize other than self-injurious behaviors when dysregulated. Plaintiff thought his mood was better with the increase in his medication dosage. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick opined that Plaintiff had fully embraced the social life on campus, noting he had started a Dungeon & Dragons campaign with friends from school,

but noted Plaintiff was still anxious about talking to his academic advisor about his financial aid status and course planning.

On May 16, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 648-659). Plaintiff reported he had not attended the fashion show discussed during the last session because he got "cold feet." Plaintiff's mother reported Plaintiff had difficulty during the family trip over the break, as he was irritable about the family activities at times. She also reported Plaintiff would become angry when talking about school and that he had dropped all of his classes due to failing grades. His mother noted that there had been a few times when Plaintiff had hit himself; but she reported if given space he would calm down quickly. When asked about this, Plaintiff said he lost interest in the math class and had difficulty writing the essays for Comp 1. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick recommended Plaintiff use student disability services to help when he returned to school in the Fall. Emotion regulation skills were also discussed with Plaintiff and his mother to help Plaintiff when he was becoming escalated.

On June 20, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 660-671). Plaintiff reported he had been avoiding large crowds but was able to manage if there was something he enjoyed doing. Plaintiff also agreed with his mother that she should become his legal guardian. Plaintiff's mother reported Plaintiff continued to be frustrated by his younger sister's lack of respect toward him. Plaintiff also became irritable/angry when he was unable to play video games. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Fredrick noted Plaintiff had difficulty with managing his expectations of his

younger sister at home. Plaintiff stated his younger sister did not see him as an authority figure which caused frustration. Plaintiff's mother agreed that she would no longer place Plaintiff in authority roles over his younger sister. Mr. Frederick completed the guardianship paperwork as requested by Plaintiff.

On July 19, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 672-683). Plaintiff reported that he had been able to celebrate his 19th birthday early with his family. Plaintiff indicated he would be giving his affidavit of guardianship to his attorney and believed this would be the best for him. Plaintiff had been socializing with his Dungeons & Dragons group, as well as other activities with friends. Mr. Frederick noted Plaintiff would resume taking classes at the community college. Plaintiff agreed that he would not play video games until he completed his coursework for the day. Plaintiff reported he had done better with managing his anger toward his sister, but still became irritated when she did not listen to their mother. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Session notes indicate that the family would try to keep Plaintiff in a peer role with his younger sister as this was a better fit for the relationship.

On August 1, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 684-695). Plaintiff reported he had his guardianship hearing which caused some anxiety but the guardianship was approved. Plaintiff reported he met with the administrator at the community college and discovered he would be on academic watch. Plaintiff reported he had stopped attending classes the previous semester because he became stuck on an essay and did not know how to complete the assignment. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration;

and exhibited normal memory and judgment. Mr. Frederick noted Plaintiff continued to remain social with friends and was working on decreasing conflict with his sister. Mr. Frederick and Plaintiff discussed what made Plaintiff "freeze" emotionally the previous semester and Plaintiff made a commitment to ask for help earlier when needed.

On September 6, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 696-707). Plaintiff reported he had enrolled in two classes and discussed the work that had been required. Plaintiff planned to be more focused on completing assignments and now used a recorder during lectures to help with his studies. Plaintiff was also meeting with a counselor weekly to help with schoolwork.  Plaintiff had helped out at a club fair the previous week and had been interacting better with his younger sister. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick noted Plaintiff would be exploring the gym at the college and that he planned to work out some days after class.

On October 3, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 708-719). Plaintiff reported he was doing well at community college. Plaintiff was actively participating in a club on Fridays, and had made a friend group through this club. Plaintiff reported he was doing well academically and had recently written an essay about autism. Plaintiff indicated he had not seen his mother much due to conflicting schedules. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick noted Plaintiff had not been required to parent/supervise his younger sister which helped reduce the pressure of a parenting responsibility.

On November 7, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 751-752). Per his attorney's request, Plaintiff asked that a form be completed after the session. Plaintiff talked about the three Halloween parties he had attended, noting one party was with friends. Plaintiff had enjoyed himself during these parties.  Plaintiff indicated he had been completing his classwork and had earned "C's" on his longer exams.  Plaintiff reported he was grounded from his play station because he had over-drafted his account.  Mr. Frederick noted Plaintiff was having sporadic conversations with his father over the telephone. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick opined that Plaintiff could function at an adequate level in a job given the right understanding of his disability and if Plaintiff was provided accommodations but that Plaintiff would not perform well if those areas were not addressed.

On November 7, 2019, with Plaintiff's assistance, Mr. Frederick completed a Treating Source Statement-Mental, opining that Plaintiff was moderately limited in multiple areas of functioning. (Tr. 720-722). Mr. Frederick further opined that Plaintiff was markedly limited in his ability to understand and remember detailed instructions; that Plaintiff was unable to make judgments that are commensurate with the functions of unskilled work (i.e. simple work related decisions); that Plaintiff would likely be off task for 20% of the day (i.e. approximately 1.5 hours) or more due to symptoms related to his impairments during a typical 40-hour work week; and that Plaintiff would likely be absent two or more days a month due to symptoms related to his impairments.

On November 25, 2019, Plaintiff was seen by Dr. Donnell for a follow-up appointment regarding his anxiety. (Tr. 738-750). Plaintiff reported was tolerating his medication well.

Plaintiff's mother reported that she noticed when Plaintiff stopped taking his medication and that he struggled during those times. Plaintiff was still attending classes at the community college and reported that while the course work was hard he was doing okay. Dr. Donnell noted that Plaintiff was applying for disability and indicated that Plaintiff's problems with anxiety and social skills, along with his learning issues, were not likely resolve. However, Dr. Donnell opined that the impact of these issues on Plaintiff's life function-wise would be small but significant. Upon evaluation, Dr. Donnell noted Plaintiff was alert and oriented, and had normal memory, thought content and interaction. Dr. Donnell recommended Plaintiff continue with his medication and follow-up in six months.

On November 25, 2019, Dr. Donnell completed a Treating Source Statement-Mental, opining that Plaintiff was moderately limited in multiple areas of functioning. (Tr. 723-725). Dr. Donnell further opined that Plaintiff was markedly limited in his ability to understand and remember detailed instructions; that Plaintiff was be unable to make judgments that are commensurate with the functions of unskilled work (i.e. simple work related decisions); and that Plaintiff would likely be off task for 20% of the day (i.e. approximately 1.5 hours) or more due to symptoms related to his impairments during a typical 40-hour work week.

On December 5, 2019, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 753-755). Plaintiff reported he was able to turn the forms into his attorney and that he was in the process of filing for disability. Mr. Frederick noted Plaintiff spent time with his family, and his sister's boyfriend's family, over the Thanksgiving break and all went well. Plaintiff indicated he would be meeting with his school counselor to discuss classes for the next semester, noting he would like to take four classes. Plaintiff discussed his relationship with his father and that his father offered to purchase a new computer for him. Plaintiff indicated he had not been as angry with his

younger sister, noting that his older sister had taken more of the authority figure role. Plaintiff continued to meet with his club on campus and was looking forward to their Christmas party. Plaintiff had also been eating healthier and making sure to complete his studies before playing video games. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Mr. Frederick noted Plaintiff desired to take a more active role in his club next semester.  Overall Plaintiff was making progress on treatment goals.

On January 23, 2020, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 756-757). Plaintiff reported he passed one class last semester but failed the second class so he would need to file an appeal for his financial aid. Plaintiff indicated he would like to obtain a driver's license so Mr. Frederick indicated they would work on finding a driving class. Upon observation, Mr. Frederick noted Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment. Plaintiff identified his support team and Mr. Frederick reminded him to ask for help should he have difficulty with an assignment.

On February 24, 2020, Plaintiff was seen by Mr. Frederick for a therapy session. (Tr. 758-760). Plaintiff reported he met weekly with his mother and sister, as well as a school coordinator, to monitor his academic progress. Plaintiff reported he was only taking one class but hoped to take four classes next semester. Mr. Frederick noted Plaintiff continued to pursue disability and requested a treatment summary letter for his attorney. Plaintiff planned to give a presentation on an area of interest to his social club on campus. Plaintiff's mother reported Plaintiff was having difficulty disengaging from parenting his younger sister. Upon observation, Mr. Frederick noted

Plaintiff interacted cooperatively; maintained good eye contact; had no difficulty with attention and concentration; and exhibited normal memory and judgment.

In a letter dated February 24, 2020, Mr. Frederick stated Plaintiff had demonstrated some progress but still had areas of deficit and difficulties in functioning. (Tr. 761). Mr. Frederick opined Plaintiff's progress was linked to his increasing socialization, primarily through a student club on campus. However, Plaintiff continued to have difficulty with his academic performance and his relationship with his younger sister. While Plaintiff had the intellect to be successful in school, Mr. Frederick opined he would require a high level of parental and sibling support to remain on track. With respect to employment, Mr. Frederick indicated Plaintiff had not worked due to focusing on school and due to difficulties he would likely face in the workforce. Mr. Frederick opined Plaintiff would be best suited for jobs that are repetitive, provide job coaching, and did not require fast changes in routine or tasks.

## III.  Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits *de novo* to ensure that there was no legal error that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin,* 825 F. 3d 936, 939 (8th Cir. 2016). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Lawson v. Colvin*, 807 F.3d 962, 964 (8th Cir. 2015).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir.

15

2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id*.

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental impairment that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

IV.     **Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ failed to properly evaluate the medical opinion evidence; and 2) the Commissioner erred in evaluating Plaintiff's RFC which is not based on substantial evidence.

A.     **Subjective Complaints and Symptom Evaluation:**

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.*  "Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016).  After reviewing the administrative record, the Court finds the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors.

Plaintiff argues that the ALJ mischaracterized evidence and made material misstatements of the record. Specifically, Plaintiff argues the ALJ ignored evidence revealing Plaintiff has difficulty regulating his anger; has difficulty communicating what support he needs; continually needs a high level of parental and sibling support to remain on track with his college education; and has difficulty with life skills including over-drafting his account. Contrary to Plaintiff's

17

assertions, the ALJ addressed Plaintiff's strengths and weaknesses when determining his capabilities to perform substantial gainful activity.

With respect to Plaintiff's daily activities, the ALJ noted that while Plaintiff's Full Scale IQ fell within the high average range, Plaintiff had struggled academically, at times, and needed continued support when enrolled in college level classes to help ensure he turned assignments in on time. However, the ALJ also noted during the time period in question, Plaintiff was able to take care of his personal hygiene needs, with reminders at times; to prepare simple meals; and to perform household chores if asked. The record further revealed Plaintiff had joined a club on campus and had made friends through this group. Plaintiff regularly played video games; participated with a Dungeon & Dragons group on Saturdays; and socialized both on and off campus. The ALJ addressed Plaintiff's strained relationship with his younger sister and pointed out that when Plaintiff was allowed to be his sister's peer/sibling and not a parental figure the relationship improved.

With respect to Plaintiff's alleged mental impairment, the ALJ discussed treatment notes from Plaintiff's primary care physician and his therapist making note of the fact that both medical providers routinely found Plaintiff to have a relatively normal psychological examination and to experience positive results with the use of medication, as well as therapy. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). During therapy sessions, Plaintiff worked with his therapist on how to handle stressful situations through role-play, and stepping away and finding space to calm down. After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have a disabling mental impairment during the time period in question.

Although it is clear Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.     RFC Determination and Medical Opinion Evidence:**

Plaintiff argues the failed to properly evaluate the medical statements completed by his primary care physician and therapist; and erred in determining Plaintiff's RFC. (ECF. No. 16, pp. 1-7).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants; the assessments of Plaintiff's treating medical providers; Plaintiff's subjective complaints; and his medical records when he determined Plaintiff could

perform work at all exertional levels but with certain non-exertional limitations. In applying the applicable regulations, the ALJ focused on the persuasiveness of the medical opinions of Dr. Donnell and Mr. Frederick, explicitly discussing the supportability and consistency. 20 C.F.R. § 416.920c(a)-(c) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose of the treatment relationship, and the extent of the treatment relationship, specialization, and other factors); 20 C.F.R. § 416.920c(b)(2)(the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion). After reviewing the record, the Court finds that the ALJ did not err in finding that portions of the Treating Source Statements completed by Dr. Donnell and Mr. Frederick, respectively, were unpersuasive. It is not improper for an ALJ to discount a medical opinion that consists of nothing more than checked boxes with no explanation. *See Kraus v. Saul*, 988 F.3d 1019, 1025 (8th Cir. 2021). Furthermore, substantial evidence supports the ALJ's decision to discount portions of the statements for lack of consistency and support.

With respect to Dr. Donnell's opinion, the ALJ acknowledged that Dr. Donnell was a treating provider familiar with Plaintiff's case, but determined there was no objective evidence to support some of the limitations listed in the November 25, 2019, Treating Source Statement. Specifically, the ALJ discounted Dr. Donnell's opinion that Plaintiff was unable to make judgments that are commensurate with the functions of unskilled work (i.e. simple work related decisions); and that Plaintiff would likely be off task for 20% of the day (i.e. approximately 1.5 hours) or more due to symptoms related to his impairments during a typical 40-hour work week. In making this determination, the ALJ pointed to Dr. Donnell's treatment notes that consistently

found Plaintiff to have positive results with the use of medication; and to exhibit normal interactions, thought content, memory and affect. The ALJ also found Dr. Donnell's statement that Plaintiff's issues had a "small but significant" impact on Plaintiff's life and functioning was inconsistent with the above limitations listed in the Treating Source Statement. After reviewing the record, the Court finds the ALJ adequately articulated the reasoning for adopting some, but not all, of the limitations from Dr. Donnell's statement.

With respect to Mr. Frederick, the ALJ found that the some of the limitations expressed in the Treating Source Statement dated November 7, 2019, were also unsupported by the record. Specifically, the ALJ discounted Mr. Frederick's opinion that that Plaintiff was unable to make judgments that are commensurate with the functions of unskilled work (i.e. simple work related decisions); that Plaintiff would likely be off task for 20% of the day (i.e. approximately 1.5 hours) or more due to symptoms related to his impairments during a typical 40-hour work week; and that Plaintiff would likely be absent two or more days a month due to symptoms related to his impairments. As discussed by the ALJ, Mr. Frederick's therapy notes revealed Plaintiff was continually found to maintain good eye contact, to cooperate during sessions, to have normal attention and concentration, and to have normal memory and judgment.  Plaintiff also continually reported that he had made friends through a social group on campus and that he participated in activities with these friends both on and off campus. At a therapy session in November of 2019, Plaintiff reported that he had enjoyed himself at three Halloween parties; and that he had a good time over the Thanksgiving holiday visiting with family. Finally, while Plaintiff continued to struggle with staying on task and turning in assignments on time, therapy notes reveal Plaintiff attended meetings with an academic counselor to help when he was struggling with coursework. The ALJ also discussed Mr. Frederick's February 24, 2020, letter where he stated that Plaintiff

had not been working because Plaintiff was focusing on school. However, Mr. Frederick also opined that Plaintiff "would best be suited for jobs that are repetitive, provide job coaching, and that don't require fast changes in his routine or tasks." (Tr. 761). After reviewing the record, the Court finds the ALJ adequately expressed the reasoning for adopting some, but not all, of the limitations from Mr. Frederick's statement.

The ALJ was required to adopt a RFC based upon the record as a whole. *See Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (stating that "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC;" and that the ALJ does so on the basis of "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations"). The Court finds the ALJ evaluated all of the medical evidence of record and adequately explained the reasons for the weight given this evidence. After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

## C.    Hypothetical Question to the Vocational Expert:

The hearing transcript along with the evidence of record, supports the hypothetical posed by the ALJ to the vocational expert as it fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a cook helper, an air purifier servicer, an office helper, a tube clerk, and an addressing clerk. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.      Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of February 2022.

/s/      *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE